IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

DEDRIC JONES                                                                                    PLAINTIFF

VS.                                         5:15-CV-00213-BRW

RANDY JACKSON, *et al.*                                                                   DEFENDANTS

## ORDER

Pending is the Motion for Summary Judgment (Doc. No. 34) filed by Separate Defendants Jefferson County, Arkansas (the "Sheriff's Department") and Sheriff Gerald Robinson.[1] Plaintiff Dedric Jones has responded and Separate Defendants have replied.[2] For the reasons set out below, the Motion is GRANTED.

**I.   BACKGROUND**[3]

During the time relevant to this case, Defendant Randy Jackson was employed by the Sheriff's Department as an investigator.[4]

On June 13, 2014, Jackson got into an argument with his girlfriend and allegedly pulled a gun on her (the "domestic dispute"). The girlfriend's sister, who called 911 to report the domestic dispute, told the dispatcher this wasn't the first time Jackson pulled a gun on his girlfriend, and that she (the girlfriend) was afraid of Jackson because he was a cop.[5]

---

[1] In his individual and official capacities.

[2] Doc. Nos. 37, 38.

[3] Unless otherwise noted, the facts in the Background section – which are either not in dispute or have been resolved in favor of Jones (as the nonmoving party) – are taken from Plaintiff's Complaint (Doc. No. 1) or Defendants' Statement of Undisputed Facts (Doc. No. 36).

[4] The Sheriff's Department hired Jackson as a deputy in 2006. He resigned on July 11, 2014.

[5] Doc. No. 35-7.

Early the morning of July 5, 2014, Jackson drove his personal vehicle to a bar to pickup his girlfriend. He went in the bar, but could not locate his girlfriend, so he went back outside where he got into a dispute with his girlfriend's ex-boyfriend. After the ex-boyfriend left, Jackson got into a dispute with Jones, which ended when Jackson shot Jones in the chest. Jackson then got in his truck and drove home. Once home, Jackson called the Sheriff's Department to report the shooting.

Jones's Complaint alleges that the Sheriff's Department and Robinson violated his constitutional rights[6] by hiring Jackson and by failing to properly train, instruct, and supervise "Jackson and others on the proper use of force."[7] Jones also asserts state-law, tort claims against Jackson for battery and outrage, and seeks to hold Separate Defendants "liable under the doctrine of *respondeat superior*."[8] The Sheriff's Department and Robinson seek summary judgment on all claims against them.[9] Jones asserts that summary judgment is not appropriate because two facts remain in dispute: (1) whether the Sheriff's Department and Robinson properly investigated the domestic dispute, and (2) whether a proper investigation would have prevented the shooting.[10]

---

[6] Jones asserts claims under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the Federal Constitution; and claims under the Arkansas Civil Rights Act (A.C.A. § 16-123-101 *et seq*.).

[7] Doc. No. 1.

[8] *Id.*

[9] Doc. No. 34.

[10] Doc. No. 37.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[11] The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[12]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should be granted only when the movant has established a right to the judgment beyond controversy.[13] Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[14] A court must view the facts in the light most favorable to the party opposing the motion.[15] The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing

---

[11]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[12]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[13]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[14]*Id.* at 728.

[15]*Id.* at 727-28.

that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.[16]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[17]

### III. DISCUSSION

Jones attempts to avoid summary judgment by asserting that, after learning about the domestic dispute, the Sheriff's Department and Robinson did nothing to investigate until 17 days later.[18] The record contradicts this.

The Sheriff's Department learned about the domestic dispute "on or about June 13, 2014," and "immediately embarked upon an administrative investigation."[19] As soon as Robinson heard about the domestic dispute, he called Jackson to discuss it.[20] Jackson admitted that he and his girlfriend had been in an argument.[21] Robinson told Jackson he was sending someone to Jackson's home to investigate the situation further. Robinson then contacted Jackson's immediate supervisor, Captain John McNeill, and told him investigate it further and report back. A few hours later, McNeill reported back, advising Robinson that he felt like there was more to the story than Jackson was letting on, so Robinson instructed McNeill to begin a formal administrative investigation.

---

[16] *Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[17] *Anderson*, 477 U.S. at 248.

[18] Doc. No. 37, at 2 ("there was a 17-day delay in anything having to do with the investigation, with no plausible explanation for the omission").

[19] Doc. No. 36 (emphasis added).

[20] Doc. No. 38-1.

[21] *Id.*

4

Although it is undisputed that the Sheriff's Department and Robinson began investigating the domestic dispute on June 13, the formal administrative investigation did not begin until June 30, 2014, when the Sheriff's Department's lone internal-affairs investigator first received notice.[22] Likewise, although Robinson told Jackson that he was looking into the domestic dispute on June 13, Jackson was not given official notice of the formal investigation until July 1, 2014.[23] Jones asserts that this delay "provides sufficient evidence that if the [Sheriff's Department] and Robinson had properly handled the complaint" Jackson would not have shot Jones.[24] The undisputed facts contradict this conclusion.

Nothing in the record suggests that *beginning* the formal investigation sooner would have prevented the shooting – it was already underway, and Jackson knew about it, before he shot Jones.

Nothing suggests that *concluding* the formal investigation sooner would have prevented the shooting. Instead, if anything, it would have quelled concerns that Jackson posed an ongoing risk of using a gun during a dispute because the investigator determined that "Jackson has never pointed a gun at [his girlfriend]."[25]

Nothing suggests that any amount of investigation could have revealed that Jackson posed a specific threat to Jones, because the two had never met before the shooting.

Even assuming that a more diligent formal administrative investigation would have led Robinson or the Sheriff's Department to more-closely supervise Jackson, or even to fire him, the

---

[22] Doc. No. 35-7.

[23] Doc. No. 38-2.

[24] *Id.*

[25] Doc. No. 38-3.

undisputed facts contradict Jones's conclusion that it would have prevented the shooting. The Sheriff's Department's policies already prohibited Jackson from going to the bar, but he went anyway – and nothing suggests that he would have complied with more stringent restrictions. Additionally, Jackson was not acting on behalf of the Sheriff's Department when, on his day off, he drove his personal vehicle to a bar for personal reasons. Likewise, Jackson did not shoot Jones with a gun issued by the Sheriff's Department – he shot Jones with a personally-owned gun. Last, Jones, who had never met Jackson, was unaware that Jackson was a police officer.[26] In fine, even assuming that Robinson or the Sheriff's Department failed to properly investigate the domestic dispute or to train and supervise Jackson afterward, nothing in the record suggests that there is a causal connection between such alleged failure and Jackson shooting Jones. Accordingly, Separate Defendants Robinson and the Sheriff's Department are entitled to summary judgment.

## CONCLUSION

For the reasons set out in the findings of facts and conclusions of law above, Separate Defendants' Motion for Summary Judgment (Doc. No. 34) is GRANTED – Jones's claims against Separate Defendants are DISMISSED with prejudice.

IT IS SO ORDERED this 1st day of June, 2017.

/s/ Billy Roy Wilson
UNITED STATES DISTRICT JUDGE

---

[26] According to testimony Jackson gave during his criminal trial (Doc. No. 38-3), Jackson told Jones that he was a police officer. Jones says he did not hear Jackson identify himself as a police officer (Doc. No. 37). Accordingly, it is undisputed that Jones was unaware Jackson was a police officer.